# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-4483
_____

Bruce Munro; Bruce Munro Studio

*Plaintiffs - Appellants*

v.

Lucy Activewear, Inc.; Lucy Apparel, LLC; VF Outdoor, Inc.; VF Corporation

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 16, 2018
Filed: August 9, 2018

_____

Before SHEPHERD, MELLOY, and GRASZ, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Bruce Munro and Bruce Munro Studio (collectively "**Munro**") appeal the district court's dismissal of his complaint against Lucy Activewear, Inc., Lucy Apparel, LLC, VF Outdoor, Inc., and VF Corporation (collectively "**Lucy**") and the denial of his motion to amend his complaint based on a finding of futility. Munro argues that the district court erred when it found that his tortious interference claim

was preempted by the Copyright Act[1] and that his proposed amended trade dress, trademark, and fraud claims were futile.  We disagree with Munro except as to his trademark claim.  Thus, we affirm in part and reverse and remand in part.

## I. Background

Munro is an artist best known for his works "Field of Light" and "Forest of Light"—"large-scale, immersive, light-based installations, and exhibitions." Proposed Amend. Compl. ¶ 1.  Munro alleges that Lucy contacted him and proposed a Lucy advertising and promotional campaign featuring Munro's work. He further claims that, relying on a promise of confidentiality, he shared additional information with Lucy about his prior work, including "attendance figures, achieved online/multi-media traffic, and promotional methods used for the exhibitions."  He further disclosed that he was in talks with public officials in Boston, Massachusetts about creating a public exhibition in the city.  Following these disclosures, Munro says that Lucy stopped contacting him and that communications with Boston officials ceased soon thereafter as well.

In October 2013, Lucy launched a light exhibition and advertising campaign for Lucy in Boston.  The exhibition, titled "Light Forest," was an interactive light installation that responded to the participants' movements.  An advertising campaign associated with the exhibit crossed several media platforms, including television, print, internet, and in-store displays.

In 2015, Munro filed a complaint against Lucy in Texas state court alleging that, by presenting the "Light Forest" exhibition and advertising campaign in Boston, Lucy infringed on Munro's trademark and trade dress and usurped a prospective business opportunity.  In September 2015, Lucy removed the case to federal court and

---

[1] 17 U.S.C. § 101 et seq.

-2-

then filed a motion to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer venue. Lucy also filed a separate Fed. R. Civ. P. Rule 12(b)(6) motion to dismiss for failure to state a claim. In January 2016, the case was transferred to the federal district court in Minnesota. The following month, Lucy renewed its Rule 12(b)(6) motion. Munro responded, but in March 2016, he also moved to amend his complaint. In his proposed amended complaint, Munro alleged: trademark and trade dress infringement, trademark and trade dress dilution, false designation of origin and unfair competition, misappropriation, fraud, tortious interference with prospective business opportunities, and unfair competition. The district court found that Munro's proposed amended complaint was futile and denied his motion to amend. It also granted Lucy's motion to dismiss Munro's complaint for failure to state a claim. The court dismissed without prejudice Munro's fraud claim as well as his trademark claim—to the extent it is based on the similarity of the names of the two exhibitions— but it dismissed all remaining claims with prejudice. Munro appeals.

## II. Discussion

We usually review the district court's "denial of leave to amend a complaint under an abuse of discretion standard; however, when the district court bases its denial on the futility of the proposed amendments, we review the underlying legal conclusions de novo." Jackson v. Riebold, 815 F.3d 1114, 1122 (8th Cir. 2016) (internal quotation marks omitted). Federal Rule of Civil Procedure 15(a)(2) states "a party may amend its pleading only with the opposing party's written consent or the court's leave[,] [and] [t]he court should freely give leave when justice so requires." However, "[f]utility is a valid basis for denying leave to amend." Jackson, 815 F.3d at 1122. "[W]hen the court denies leave on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." Cornelia I. Crowell GST Tr. v. Possis Med., Inc., 519 F.3d 778, 782 (8th Cir. 2008). When reviewing "a motion to dismiss an action for failure to state a claim

under Rule 12(b)(6), [we] tak[e] the factual allegations in the complaint as true and afford[] the non-moving party all reasonable inferences from those allegations." Butler v. Bank of Am., N.A., 690 F.3d 959, 961 (8th Cir. 2012). A plaintiff's motion to amend the complaint will be granted if he "show[s] that such an amendment would be able to save an otherwise meritless claim." Jackson, 815 F.3d at 1122.

Munro argues that the district court erred when it denied his motion for leave to amend four of his claims: (1) trade dress infringement; (2) fraud; (3) tortious interference; and (4) trademark infringement. We address each claim in turn.

### 1. Trade Dress

In Dastar Corp. v. Twentieth Century Fox Film Corp., the Supreme Court held that "[t]he Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'" Dastar, 539 U.S. 23, 28 (2003) (quoting 15 U.S.C. § 1127). The Court found, however, that the Lanham Act was not designed to protect originality or creativity and it does not create a cause of action for plagiarism. Id. at 36-37. "Trade dress is the total image of a product, the overall impression created, not the individual features." Aromatique, Inc. v. Gold Seal, Inc., 28 F.3d 863, 868 (8th Cir. 1994) (internal quotation marks omitted). The Lanham Act creates a civil cause of action for trade dress infringement, stating:

> Any person who, on or in connection with any goods or services . . . , uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which—is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or in commercial advertising or promotion, misrepresents the nature, characteristics,

qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). To successfully allege a claim under the Lanham Act, a plaintiff must prove that his trade dress is: (1) distinctive; (2) nonfunctional; and (3) likely to "be confused with the accused product." Aromatique, Inc., 28 F.3d at 868. In Wal-Mart Stores, Inc. v. Samara Brothers, Inc., the Supreme Court held that a plaintiff could not succeed in a trade dress claim against another company for producing a "knockoff" of its design without showing that the designs had acquired "secondary meaning" so that they "identify the source of the product rather than the product itself." Samara Brothers, 529 U.S. 205, 208, 211, 214 (2000) (internal quotation marks omitted). "[T]he origin of goods—the source of wares—is the producer of the tangible product sold in the marketplace . . . not the producer of the (potentially) copyrightable or patentable designs that the clothes embodied." Dastar, 539 U.S. at 31, 37.

Here, Munro presents essentially the same claim presented in Dastar and Wal-Mart. Munro asserts that Lucy created a "knockoff" light installation that basically plagiarized his creative designs. Copyright law, not trademark law, protects Munro's creative works. As the district court found, Munro's installation is not a "mark" that the Lanham Act was attempting to protect. Rather, the installation is the product itself. Because the light installation is a product, not a mark, and because copyright, not trademark, protects artistic and creative ideas and concepts, see Dastar, 539 U.S. at 37, Munro's claim does not properly fall under the Lanham Act. Furthermore, because Munro's proposed amended complaint continues to style his claim as trade dress infringement under the Lanham Act, he has not shown that amending the complaint would save his claim. Thus we find the district court properly dismissed his motion to amend his trade dress claim as futile.

## *2. Fraud*

Next, Munro argues that Lucy perpetrated fraud by making promises to Munro that it never intended to keep. He argues that Lucy stated it would keep the information he provided regarding his light exhibitions and prospective business opportunity with the city of Boston confidential. But, he asserts, Lucy knowingly made those false promises so that it could exploit the information for its own gain, as evidenced by the fact that Lucy did not maintain confidences.

The circumstances of fraud must be pled with particularity. Fed. R. Civ. P. 9(b); Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549 (8th Cir. 1997). The circumstances that a plaintiff must allege "include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." Id. (internal quotation marks omitted). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Id. (internal quotation marks omitted). If the plaintiff's "allegations of fraud are explicitly . . . based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief." Id. at 550 (internal quotation marks omitted). The Minnesota Supreme Court has held:

> It is a well-settled rule that a representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the represented act or event did not take place. It is true that a misrepresentation of a present intention could amount to fraud. However, it must be made affirmatively to appear that the promisor had no intention to perform at the time the promise was made.

Valspar Refinish, Inc. v. Gaylord's, Inc., 764 N.W.2d 359, 368-69 (Minn. 2009).

-6-

In his proposed amended complaint, Munro merely alleged who made the false promise, when the promise was made, and the general content of the promise. This is insufficient to show fraud. See Parnes, 122 F.3d at 549; Stumm v. BAC Home Loans Servicing, LP, 914 F. Supp. 2d 1009, 1014 (D. Minn. 2012). Munro relies on the phrase "on information and belief" to allege that Lucy intentionally provided false promises. He argues the fact that Lucy broke its promises is proof that Lucy never intended to keep those promises in the first place. We disagree. Munro's complaint does not set forth any supporting facts showing that Lucy intended to defraud him when the promises were made. Thus, he has not adequately alleged fraud under Minnesota law, and the district court did not err in dismissing his claim. See Valspar, 764 N.W.2d at 368-69; cf. Parnes, 122 F.3d at 549. Additionally, in his proposed amended complaint, Munro still failed to allege sufficient facts to support his fraud claim. Therefore, the proposed amendment is futile, so we find the district court did not err in denying Munro's motion to amend.

### 3. Tortious Interference

In his third claim for tortious interference under state law, Munro asserts that he had a reasonable probability of staging an exhibition of his "Field of Light" and/or "Forest of Light" works in the city of Boston, but Lucy usurped his prospective business opportunity. Munro claims that using the information he provided Lucy in confidence, Lucy wrongfully and intentionally interfered with his business dealings with the city of Boston by soliciting and presenting Boston city officials an alternative knock-off light exhibition and advertising campaign.

To succeed on a claim for tortious interference with prospective economic advantage, a plaintiff must establish:

1) The existence of a reasonable expectation of economic advantage;

2) Defendant's knowledge of that expectation of economic advantage;

3) That defendant intentionally interfered with plaintiff's reasonable expectation of economic advantage, and the intentional interference is either independently tortious or in violation of a state or federal statute or regulation;

4) That in the absence of the wrongful act of defendant, it is reasonably probable that plaintiff would have realized his economic advantage or benefit; and

5) That plaintiff sustained damages.

Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc., 844 N.W.2d 210, 219 (Minn. 2014).

The Copyright Act will preempt a state-law claim if: "(1) the work at issue is within the subject matter of copyright as defined in § 102 and 103 of the Copyright Act, and (2) the state law created right is equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106 [of the Copyright Act]." Ray v. ESPN, Inc., 783 F.3d 1140, 1142 (8th Cir. 2015) (per curiam) (alteration in original) (internal quotation marks omitted). "[P]ictorial, graphic, and sculptural works" are subject matter falling under the umbrella of copyright protection. 17 U.S.C. §102(a)(5). Munro's light-based artwork and installations are sculptures and, as such, are copyrightable. See id. Munro does not contest that his works fall within the subject matter of copyright. Accordingly, we find that Munro's claim meets the first element of preemption.

We also find the second element of preemption is present. "[E]xclusive rights within the general scope of copyright," Ray, 783 F.3d at 1142, include "reproduc[ing] the copyrighted works in copies or . . . prepar[ing] derivative works based upon the copyrighted work," 17 U.S.C. § 106. "A 'derivative work' is a work based upon one or more preexisting works, such as a[n] . . . art reproduction . . . or any other form in

which a work may be recast, transformed, or adapted." Id. § 101. In Ray v. ESPN, Inc., we held that the plaintiff's state-law rights had been "infringed by the mere act of reproduction," so "his state-law rights are equivalent to the exclusive rights within the general scope of copyright." Ray, 783 at 1144 (internal quotation marks omitted). Similarly, Munro alleges his state-law rights were infringed by Lucy's reproduction of his light-installations. Thus, Munro's "state-law rights are equivalent to the exclusive rights within the general scope of copyright." Id. (internal quotation marks omitted). As a result, Munro's tortious interference claim is preempted by the Copyright Act. Because the claim is preempted, allowing an amendment to the complaint would be futile. See 17 U.S.C. § 301(a) (stating that when "legal or equitable rights . . . are equivalent to any of the exclusive rights within the general scope of copyright . . . no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State"). Therefore, we find the district court properly denied Munro's motion to amend his tortious interference claim.

## 4. Trademark Infringement

Finally, Munro argues that Lucy's use of the name "Light Forest" was a confusingly similar and colorable imitation of his "Forest of Light" and "Field of Light" trademarks. He asserts that Lucy's unauthorized use of his marks likely caused the public to erroneously believe that Lucy's exhibition was the same or affiliated with Munro's exhibitions and that Lucy unfairly benefitted and profited from Munro's reputation and the reputation of his trademarks.

A "trademark" can be "any word, name, symbol, or device, or any combination thereof . . . [used] to identify and distinguish [a producer's] goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. Federal trademark law is intended to "prevent[] competitors from copying a source-identifying mark."

-9-

Dastar, 539 U.S. at 33; see also 15 U.S.C. § 1125(a). The terms "origin of goods" and the "source" of goods under the Lanham Act refer to the producer of the actual product or good, not the producer of the creative idea for the product or good. Id. at 36. However, in some situations, the producer of the creative idea for the product and the producer of the actual product are the same. See Shepard v. European Pressphoto Agency, 291 F. Supp. 3d 465, 470 (S.D.N.Y. 2017). For example, an artist is considered the producer of the creative ideas of his work, but if the artist also makes and sells his artwork himself, then he is considered the producer of that good or service as well and is "able to assert a Lanham Act claim for false designation of origin." Id.

Here, the district court held that Munro did not properly assert a trademark claim because he failed to provide facts suggesting that the names of his installations—"Field of Light" and "Forest of Light"—served a source-identifying function for a product or service. Instead, the court found, the names merely identified Munro as the artist or source of the creative idea. We disagree. Munro has alleged that he and his studio together create, design, develop, produce, promote, and market these large-scale immersive light installations. Like the artists in Shepard v. European Pressphoto Agency, Munro actually produces and sells these installations, making him the producer of the good. Id.; see also Dastar, 539 U.S. at 36. Thus, the names "Field of Light" and "Forest of Light" are serving a source-identifying function for the installations, distinguishing them as unique products made by Munro and his studio. See 15 U.S.C. § 1127; Dastar, 539 U.S. at 36. Because Munro produces these installations, he is the "origin of goods" or "source" that the names identify, which entitles him to bring an action under the Lanham Act. See Shepard, 291 F. Supp. 3d at 470. Munro pled these facts in his amended complaint and his proposed second amended complaint. Because "[we] tak[e] the factual allegations in the complaint as true and afford[] the non-moving party all reasonable inferences from those allegations," Butler, 690 F.3d at 961, we find that the district court erred in dismissing Munro's trademark claim regarding the names of the installations.

-10-

## III. Conclusion

For the foregoing reasons, we affirm the district court's decision to dismiss Munro's trade dress, fraud, and tortious interference claims as well as its denial of Munro's motion to amend these claims because the proposed amendments are futile. However, we find that Munro has sufficiently pled a trademark claim so as to survive a motion to dismiss for failure to state a claim. Accordingly, we reverse the district court's dismissal of Munro's trademark claim. Furthermore, we reverse the denial of Munro's motion to amend his compliant with respect to this claim. Finally, we remand the trademark claim under 15 U.S.C. 1125(a) to the district court for further proceedings consistent with this opinion.

_____